■ ASHLEY MATTISON, an Infant, by CAROLE MATTISON, Her Mother and Guardian, et al., Appellants-Respondents, v STEVEN C. CRAIG, Defendant, and COUNTY OF WASHINGTON, Respondent-Appellant. [699 NYS2d 161] —Cardona, P. J. Cross appeals from an order of the Supreme Court (Dier, J.), entered February 23, 1999 in Washington County, which, *inter alia*, denied a motion by defendant County of Washington for summary judgment dismissing the complaint against it.

In the summer of 1990, the Washington County Department of Social Services placed plaintiff Ashley Mattison (hereinafter the infant) and her two sisters in a foster home operated by Karen Jenkins and Albert Jenkins. On the morning of December 20, 1990, Albert Jenkins asked his 13-year-old daughter, Heidi, to get the morning newspaper from across the street. Instead of retrieving the paper herself, the infant, who was

four years old, was permitted to do so. While crossing the road to return to the house, the infant sustained injuries when she was struck by an automobile driven by defendant Stephen C. Craig.

Thereafter, the infant's mother commenced this personal injury action on behalf of herself and the infant against Craig and defendant County of Washington (hereinafter defendant) alleging, *inter alia*, that defendant had negligently placed the infant in the home of foster parents who failed to provide adequate supervision. Following joinder of issue, defendant moved for summary judgment dismissing the complaint on the basis that its alleged negligence was not a proximate cause of the accident. Plaintiffs, in turn, cross-moved for summary judgment arguing that defendant was absolutely liable for the infant's injuries because it breached certain provisions of the Social Services Law and requested that a jury determine the issue of proximate cause. Supreme Court denied both motions resulting in these cross appeals.

We initially note that plaintiffs have not set forth either in their complaint or bill of particulars the specific statutory violations providing the basis for their claim of absolute liability. However, as is evident from the affidavit of plaintiffs' attorney, their theory is premised upon defendant's alleged negligent placement of the infant in a foster home with foster parents who were caring for more foster children than they were certified for or permitted to have under Social Services Law § 378 and, as a result, defendant failed to provide proper supervision for the infant. It is clear that the number of foster children under the Jenkinses' care at the time of the infant's accident exceeded the number for which they were certified (four). It further appears that, without application of any of the statutory exceptions, the Jenkinses cared for more than the number of children permitted under Social Services Law § 378 (4) (six).

Even assuming a statutory violation, contrary to plaintiffs' assertion summary judgment cannot be granted upon their cause of action premised upon such a violation unless they also demonstrate that the statutory violation was a proximate cause of the injury (*see, e.g., Tepoz v Sosa*, 241 AD2d 449; *Van Alstine v Padula*, 228 AD2d 909, 910, *appeal dismissed* 89 NY2d 858; *see also, Boehm v Telfer*, 250 AD2d 975, 976-977). Those cases wherein the courts have required only a practical or reasonable connection between the injury and the statutory violation are inapposite (*see, e.g., Brasca v Jessup*, 258 AD2d 490, *lv denied* 93 NY2d 809; *O'Connell v Kavanagh*, 231 AD2d 29, 34).

Turning to the issue of proximate cause, this record discloses

questions of fact precluding the granting of summary judgment to defendant. At her examination before trial, Heidi testified that, on the morning of the accident, her father asked her to get the paper and she sent the infant because she was not dressed. She stated that she watched the infant through the living room window cross the street safely to get the paper. She further indicated that, before the infant crossed the road to return, she either pounded on the window or hollered in an attempt to warn the infant that a car was coming. She testified that, when the infant failed to heed her warnings, she went onto the porch but the accident had already occurred. She stated that, at the time of the incident, her father was lying on the couch and her mother was in bed.

At his examination before trial, Albert Jenkins testified that he and Heidi were awake on the morning of the accident, but his wife was still in bed. He stated that he asked Heidi to retrieve the paper; however, when the infant expressed her interest in doing so, Heidi dressed her and sent her outside. He indicated that he did not instruct Heidi to walk the infant across the road. On the other hand, Karen Jenkins testified at her examination before trial that she was awake and out of bed on the morning of the accident and many of the children were getting ready for school. She stated that Heidi asked her if the infant could accompany her to the mailbox to get the newspaper and she responded in the affirmative. She related that, at the time the infant was hit by the car, she was busy getting one of the other children ready for school. The foregoing testimony raises questions of fact concerning the level of supervision present at the time of the accident, whether any inadequacies were the result of the alleged violation of Social Services Law § 378 and, if so, the extent to which such inadequacies caused or contributed to the accident. Consequently, we find that Supreme Court properly denied the parties' respective motions for summary judgment.

Mikoll, Mercure, Yesawich Jr. and Mugglin, JJ., concur. Ordered that the order is affirmed, without costs.